...

y

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERT J. GRASSO;<br>JEFFREY V. PURCELL; and<br>PRESTIGE BUILDERS, LCC,<br><br>      Plaintiffs,<br><br>v.<br><br>CITY OF ANSONIA; INLAND WETLANDS,<br>COMMISSION OF THE CITY OF ANSONIA<br>and JOHN IZZO, JR.,<br><br>      Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:  CIVIL NO.   3:02CV455 (MRK)<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**RULING ON MOTION FOR STAY**

    This federal question action arising from defendants' denial of plaintiffs' application for a wetlands permit was filed on March 13, 2002. Since then, this action has not moved forward in any meaningful way. The reason is that defendants – the City of Ansonia, its Inland Wetlands Commission and John Izzo, Jr. – have requested, and the Court has granted, five stays pending an Order of Rehabilitation entered by the Commonwealth Court of Pennsylvania with respect to Legion Insurance Company ("Legion"), the general liability insurer for the defendants. [docs. # 10, 13, 15, 18, and 21].

    On August 1, 2003, defendants filed yet another motion for a stay. The latest motion, a Motion for Stay Due to Liquidation [doc. #31], followed the July 25, 2003 issuance of an Order of Liquidation by the Commonwealth Court of Pennsylvania declaring Legion insolvent and ordering Legion to be liquidated effective July 28, 2003. According to the Motion, the Order of Liquidation of the Commonwealth Court of Pennsylvania provides, in relevant part, "Unless

otherwise agreed to by the Liquidator or by the relevant guaranty associations, all actions which Legion is or may be obligated to defend a party in any court or law are stayed to the extent provided by applicable law, subject to further order of the Court."   The Motion also cites Connecticut's Insurance Guaranty Association Act, which provides in pertinent part, as follows:

> All proceedings in which an insolvent insurer is a party or is obliged to defend an insured as a party in any court in this state shall be stayed for up to six months and for such additional time thereafter as may be determined by the court from such declaration of insolvency or from the time an ancillary proceeding is instituted in the state, which is later, to permit proper defense by said association of all pending causes of action.

Conn. Stat. Ann. § 38a-851.

Invoking the Commonwealth Court's order and § 38a-851, defendants assert that this action must continue to be stayed for at least an additional six-month period, until January 28, 2004.  For several reasons, the Court will not grant another stay in this case.

First, there can be no question that the Commonwealth Court has no power to enjoin a federal court from exercising the jurisdiction that Congress has conferred on the federal courts. As the Supreme Court held in *Donovan v. City of Dallas,* 377 U.S. 408, 412-13 (1964),  "State courts are completely without power to restrain federal court proceedings in *in personam* actions."  *See also General Atomic Co. v. Felter*, 434 U.S. 12, 17 (1977) ("The rights conferred by Congress to bring . . . actions in federal courts are not subject to abridgement by state-court injunctions . . ."); *Fragoso v. Lopez*, 991 F.2d 878, 884 (1st Cir. 1993).

Second, the Court rejects defendants' suggestion that § 38a-851 seeks to divest *federal* courts of jurisdiction properly conferred on them by Congress.  By its terms, that provision applies only to Connecticut *state* courts; it merely recognizes that Connecticut's courts are obligated to respect the insurance liquidation proceedings conducted by reciprocal states such as

2

Pennsylvania. The act does not purport to interfere with duly filed actions in federal court. Any other construction of § 38a-851 would raise serious constitutional issues.

In this case, plaintiffs have properly invoked federal question jurisdiction, 28 U.S.C. § 1331, in an effort to remedy alleged violations of their constitutional rights. Accordingly, this Court has both the power and duty to proceed to consider plaintiffs' lawsuit. *See New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 359 (1989) (describing federal court's obligation to adjudicate claims within their jurisdiction as "virtually unflagging").

Third, the Court also rejects defendants' argument that a stay is required under the abstention doctrine enunciated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "Abstention 'is an extraordinary and narrow exception of the duty of a District Court to adjudicate a controversy properly before it . . .'" *Village of Westfield, NY., v. Welch's*, 170 F.3d. 116, 121 (2d Cir. 1999) (quoting *Colorado River Conservation District v. United States,* 424 U.S. 800, 813 (1976)). The Supreme Court has held that *Burford* abstention – that is, "abstention out of deference to centralized state administrative proceedings," E. Chemerinsky, *Federal Jurisdiction,* at 785 (4th ed. 2003) – is appropriate in the following circumstances:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Serv., Inc.,* 491 U.S. at 361 (quoting *Colorado River,* 424 U.S. 800 at 814); *see Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998). The Second Circuit has said that the three factors that are pertinent to an analysis of *Burford* abstention are: (1) the degree of

specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern. *Bethpage Lutheran Service v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992).

As the First Circuit explained in a comprehensive analysis of *Burford* abstention in the context of a case that is virtually identical to this case, none of the circumstances or factors identified above is implicated in this case. *See Fragoso* 991 F.2d at 887; *see also Hachamovitch*, 159 F.3d at 698 ("We detect no federal meddling in an undeniably complex area of state concern, merely the analysis of what due process demands. The federal courts are well-placed to undertake such analysis without undue intrusion upon the states' interests and prerogatives"). Indeed, neither the Liquidator for Legion nor Connecticut's Guaranty Association is a party to this action; nor have they intervened to argue that a stay is essential to prevent "disrupt[ion] of the State's attempt to ensure uniformity in the treatment of an essentially local problem." *See New Orleans Pub. Serv., Inc.,* 491 U.S. at 364.

Fourth and finally, the Court agrees with defendants that it possesses undoubted authority to issue a stay when the balance of hardships demonstrates that such relief is appropriate. *See Landis v. North American Co.*, 299 U.S. 248, 254-56 (1936) ("[T]he power to stay proceedings is incidental to every court to control the disposition of the causes on its docket . . . How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"). The Court is also mindful of, and sympathetic to, the impact that a denial of a stay may have on the defendants and the bargained-for protection they expected under Legion's insurance policy. In such circumstances, therefore, it might be appropriate to grant a

brief stay to allow a defendant to work out alternative arrangements for handling a lawsuit. A brief stay might also be warranted in the interests of comity in certain cases to allow state regulators some time to account for the filing of a lawsuit against a defendant insured by an insolvent carrier. But after 22 months of delay, we are long past the time when arrangements for the timely defense of this case should have been made.

Defendants undoubtedly purchased insurance precisely so that they would not be required to pay the costs of defending actions such as this. But it is not plaintiffs' fault that defendants' insurer became insolvent. The Court sees no reason, therefore, why defendants' misfortune should be visited upon plaintiffs by denying them their federal right to a "just, speedy and inexpensive determination" of their constitutional claims. F.R.C.P. Rule 1; *see Stinson v. Hance*, 2002 Dist. LEXIS 24193, at *9 (S.D.N.Y. 2002) ("[T]here is no reason in law, logic or common sense to shift the burden of the insurer's insolvency to plaintiff").

Accordingly, the Motion for Stay Due to Liquidation [doc.#31] is hereby DENIED.

                        IT IS SO ORDERED

                    /s/      Mark R. Kravitz
                            U.S.D.J.

Dated at New Haven, Connecticut: November 7, 2003.